## In the Matter of SULLIVAN FORD SALES, Debtor in Possession.

### Bankruptcy No. 179–10061; Adv. Nos. 179–0002 to 179–0004.

United States Bankruptcy Court, D. Maine.

Jan. 31, 1980.

---

4. H.R.Rep. No. 595, 95th Cong. 1st Sess. 429 (1977): *See also* 5 Collier on Bankruptcy 1322–11 (15th Ed. 1979).

**352**

Jeremiah D. Newbury, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for debtor.

Louis H. Kornreich, Goodman, Goodman & Kornreich, Bangor, Me., for Creditors' Committee.

## MEMORANDUM OF DECISION

CONRAD K. CYR, Bankruptcy Judge.

Sullivan Ford Sales, the largest Ford dealership in Maine, filed a voluntary chap-

ter 11 petition on November 23, 1979, whereupon reorganization relief was ordered by operation of law.[1] On December 5, 1979, the debtor in possession caused three applications to be filed with the court for authorization to enter into various financial arrangements. These applications requested that the debtor be permitted (1) to borrow $200,000 on certificates of indebtedness, (2) to borrow $500,000 from The Merrill Trust Company to finance its 1980 automobile floor plan, and (3) to use "cash collateral"[2] generated from sales of encumbered automotive parts.

The applications recited that due to the urgency of the need for operating capital written notice of the applications for relief was impracticable. The United States trustee had not yet designated a creditors' committee by the time these applications were filed with the court on December 5, 1979.[3] Informal telephonic notification of the hearing scheduled for December 6, 1979 at 11:00 A.M. was provided by the debtor in possession on December 5, 1979. Approximately one hour before the scheduled hearing, the United States trustee designated a committee of creditors. Counsel for the creditors' committee was appointed December 10, 1979. The application for authorization to enter into the 1980 floor plan financing arrangement with The Merrill Trust Company was amended at the hearing.

In the absence of consent by all parties in interest, the requested relief could be authorized only "after notice and a hearing".[4] The debtor in possession sought permission to borrow $200,000 on certificates of indebtedness having priority over all administrative expenses, pursuant to section 364(c)(1).[5]

---

1. 11 U.S.C. § 301.

2. *See id.* § 363(a).

3. "§ 151102. Creditors' and equity security holders' committee.

    (a) *as soon as practicable* after the order for relief under chapter 11 of this title, *the United States trustee shall* appoint a committee of creditors holding unsecured claims." *Id.* § 151102. (*Emphasis added.*)

4. *See id.* §§ 102(1), 363(c)(2)(B) & 364(c).

5. "[T]he court, *after notice and a hearing,* may authorize the obtaining of credit or the incurring of debt—

    (1) with priority over any or all administrative expenses of the kind specified in section

The debtor in possession requested authorization to use "cash collateral,"[6] consisting of proceeds from the sale of automotive parts, to replenish parts inventory and to defray general operating expenses, pursuant to subparagraph 363(c)(2)(B).[7] The 1980 floor plan financing agreement with The Merrill Trust Company was contingent upon court approval of the two companion applications and approval of its own provisions foreclosing adverse parties from contesting various prepetition security interests of The Merrill Trust Company. The interdependence of the three applications for relief permits the court to dispose of the pending dispute in the context of a discussion addressed solely to the application for authorization to issue certificates of indebtedness with priority over administrative expenses under section 364(c)(1).

At the hearing on December 6, 1979, a secured claim holder and several holders of unsecured claims interposed objections to the adequacy of the notice afforded by the debtor in possession. While conceding that the 24-hour interval between the telephonic notification and the hearing was indeed brief, counsel for the debtor in possession maintained that nothing more was either appropriate or necessary in the circumstances due to the urgent nature of the operating capital needs of the debtor. The debtor in possession presented uncontroverted evidence that it was operating at a negative cash flow, as well as at a pretax loss; that it was without funds with which to defray current and future operating expenses; and that earlier notification of the requests for relief was impracticable, due to the fact that agreement on the specific terms of its financing arrangements with The Merrill Trust Company was not achieved until shortly before the filing of the applications.

The adequacy of the notice provided by the debtor in possession is to be determined with reference to an important statutory rule of construction which defines "after notice and a hearing" as meaning

> " . . . after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances, but [after notice and a hearing] authorizes an act without an actual hearing if such notice is given properly and if—
> (i) such a hearing is not requested timely by a party in interest; or
> (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act . . . ."[8]

Section 102(1) articulates in purposely imprecise procedural terms a central theme of the Bankruptcy Code. The legislative history of the Bankruptcy Reform Act of 1978[9] is replete with evidence that a pivotal purpose of the bankruptcy reform effort was to separate judicial and administrative responsibilities under the Code.[10] With comparatively few exceptions,[11] the bankruptcy court is no longer required, as it was under the Bankruptcy Act, to supervise the administration of estates in bankruptcy. The Bankruptcy Reform Act of 1978 reposes in the court vastly increased jurisdiction[12] and powers[13] with which to resolve

---

503(b) or 507(b) . . . ." *Id.* § 364(c)(1). (*Emphasis added.*)

6. *See id.* § 363(a).

7. "The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(B) the court, *after notice and a hearing,* authorizes such use . . . ." *Id.* § 363(c)(2)(B). (*Emphasis added.*)

8. *Id.* § 102(1).

9. Pub.L. No. 95–598, 92 Stat. 2549 (November 6, 1978).

10. *See, e. g., Report of the Comm. on the Judiciary, House of Representatives, To Accompany H.R. 8200,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 4, 89–91, 99, 107 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963.

11. *See, e. g.,* 11 U.S.C. §§ 327(a), 328–331, 524(d), 1102(a), 1104, 1128(a) & 1324. *See also, id.* § 350(a).

12. *See, e. g.,* 28 U.S.C. §§ 1471 & 1478, added by Pub.L. No. 95–598, tit. II, § 241(a). *See also* Pub.L. No. 95–598, tit. IV, § 405(a) & (b).

13. *See, e. g.,* 28 U.S.C. §§ 1480 & 1481, added by Pub.L. No. 95–598, tit. II, § 241(a). *See also* Pub.L. No. 95–598, tit. IV, § 405(a) & (b).

disputes arising in or in connection with bankruptcy cases,[14] while at the same time relieving the court of much supervisory responsibility in the administration of estates.

■ The primary thrust of section 102(1), defining "after notice and a hearing," is to give practical effect to the separation of administrative and judicial functions, by eliminating direct involvement on the part of the court in the approval of requests for relief absent a dispute. "After notice and a hearing" has a much different meaning than does such plain language as "the court shall hold a hearing," appearing elsewhere in the Code.[15] There was complete awareness on the part of the principal congressional architect of the Code that "after notice and a hearing" did not contemplate a hearing in every instance. Indeed, that result was fully intended.

> "The phrase 'after notice and a hearing' or a similar phrase, is intended to be construed according to the particular proceeding to mean after such notice as is appropriate in the particular circumstances, and such opportunity, if any, for a hearing as is appropriate in the particular circumstances . . . . [T]his means that *if appropriate notice is given* and no party to whom such notice is sent timely requests a hearing, then the act sought to be taken may be taken without an actual hearing." [16]

■ Subparagraph 102(1)(B)(i) authorizes relief without hearing where "hearing is not requested timely by a party in interest . . . ." [17] It would torture its purpose to use this provision to license action without a hearing where the parties entitled to be heard were afforded no notice of the request for relief. Subparagraph 102(1)(B)(ii) permits the court to authorize relief, without actual *hearing,* if "there is insufficient time for a hearing to be commenced before such act must be done . . . ," but only after notice "appropriate in the particular circumstances."

The court must determine the notice "appropriate in the particular circumstances," giving due consideration to the notice opportunity available. In the present case, notice consisted of an informal oral notification communicated by counsel for the debtor in possession by telephone to a few holders of secured and unsecured claims on the day before the hearing. The creditors' committee was not designated until an hour before the hearing and its counsel was not appointed until several days later. Virtually all holders of unsecured claims received no notification of the request for relief. In the circumstances of this case, each unsecured claim holder is a party in interest entitled to appropriate notice. In the absence of a duly constituted committee of creditors, there was no alternative but to provide each individual holder with whatever notice was appropriate in the particular circumstances, thus underscoring the importance of prompt performance by the United States trustee of the duty imposed by section 151102(a). The notice to the committee, once constituted, was plainly insufficient to enable effective representation of its own interests, much less the interests of individual holders of unsecured claims.

■ The timing of requests for ex parte relief generally rests within the control of the party requesting relief. The court must be alert to the need to prevent the moving party, whether by design or neglect, from denying adequate notice to other parties in interest, which would only serve to encourage the deferment of requests for relief until an emergency had become self-evident. The time of the request for relief was within the control of Sullivan Ford Sales, although the designation of a committee of creditors was not. The evidence

---

14. *See* 28 U.S.C. § 1471(b) & (c), added by Pub.L. No. 95–598, tit. II, § 241(a).

15. *See, e. g.,* 11 U.S.C. §§ 524(d), 1128(a) & 1324.

16. 124 Cong.Rec. H 11090 (daily ed. September 28, 1978) (remarks of Rep. Don Edwards). (*Emphasis added.*)

17. 11 U.S.C. § 102(1)(B)(i).

adduced at the hearing on December 6, 1979 established that Sullivan Ford Sales and other parties in interest joining in the application for relief were aware of its serious financial condition and of the need for working capital at least a month before the commencement of the chapter 11 case. In any event, the debtor was fully cognizant, at least by November 23, 1979 when its chapter 11 petition was filed, that it would require relief of the nature requested on December 5, 1979. The debtor in possession was in a position, no later than November 23, 1979, therefore, to provide notice of the general nature of the relief requested, although the details of its financial arrangements with The Merrill Trust Company were yet to be finally agreed upon.

It is not necessary, in these particular circumstances, to determine the extent, if any, to which it would be appropriate to probe the pre-petition past in evaluating whether the debtor made sufficient use of the opportunity to provide adequate notice of the relief requested through the prompt filing of its chapter 11 petition. The 12-day delay between the commencement of the chapter 11 case and the filing of these applications squandered an ample opportunity to provide formal, written notice of the relief requested to all parties in interest.[18] In these circumstances, judicial emphasis should be placed upon protecting the rights of parties in interest to adequate advance notice of requests for relief whose filing was not within their control. A different or more relaxed rule would facilitate dilatory filing of requests for relief with a view to abbreviating the occasion for advance notice. Delay in requesting the relief and in designating the committee of creditors

deprived parties in interest in these proceedings of the advance notice appropriate in the particular circumstances. Although section 102(1) dispenses with an evidentiary hearing in certain circumstances,[19] nowhere does it expressly annul the requirement of "notice . . . appropriate in the particular circumstances."[20]

The matter may not be left there, however, unless the bankruptcy court is to abort reorganization proceedings ab initio by withholding ex parte relief essential to the survival of the business of the debtor pending evaluation of the reorganization prospects. Thus, while notice appropriate in the particular circumstances must always be provided, it remains to be determined whether relief may be granted without *advance* notice where there is insufficient time for notice before action must be taken. Boiled down to doublethink the question becomes whether action permitted only "after notice and a hearing" may be taken before either notice or hearing?[21]

There are two primary factors competing for emphasis in the present context. First, ex parte relief under section 364(c)(1) may jeopardize significant property interests of the holders of subordinated claims. Extraordinary legal safeguards are therefore required to minimize the potentially drastic consequences of ex parte relief in these and similar circumstances. Second, in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld. Reorganization under either the Bankruptcy Code or the Bankruptcy Act is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.

---

18. No such intention is attributed to any party or counsel in this case, the first sizable chapter 11 reorganization case filed in this court.

19. "In very limited emergency circumstances, there will be insufficient time for a hearing to be commenced before an action may be taken. The action sought to be taken may be taken if authorized by the court at an ex parte hearing of which a record is made in open court. A full hearing after the fact will be available in such an instance." 124 Cong.

Rec. H 11090 (daily ed. September 28, 1978) (remarks of Rep. Don Edwards).

20. *See* 11 U.S.C. § 102(1). *See also* note 16 & accompanying text *supra.*

21. The existing Rules of Bankruptcy Procedure offer no guidance and the promulgation of new rules of procedure may be considerably delayed. *See* Pub.L. No. 95–598, tit. IV, § 405(d).

The remedy under consideration bears a close resemblance to ex parte injunctive relief in federal civil proceedings generally.

"The ex parte temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief . . . . In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all." [22]

The court can conceive of no competent rationale applicable in all reorganization cases upon which to withhold emergency ex parte relief essential to the preservation of the reorganizability of the debtor pending an opportunity to provide effective final relief.

■ The procedural problems presented are closely analogous to those confronted in ex parte injunctive relief proceedings under Federal Rule 65(b). The procedural safeguards mandated by Federal Rule 65(b) [23]

may therefore suggest standards appropriate for consideration by the court in the context of proceedings for ex parte relief in chapter 11 reorganization cases.

■ Where parties in interest are not afforded appropriate notice in the particular circumstances, considering the opportunity for notice and the nature of the relief requested, ex parte relief should nonetheless be available upon a sufficient showing [24] that immediate and irreparable injury, loss, or damage will result to the moving party *or to the reorganization effort* before adverse parties or their counsel can be notified.[25] Counsel for the moving party should be required to certify in writing the efforts made to provide notice [26] and the reasons supporting the claim that advance notice should not be required.[27]

■ The extraordinary nature of ex parte relief requires exceptional scrutiny on the part of the court as the only real protection against loss or damage to the property interests of innocent parties. *See Austin v.*

---

**22.** Wright & Miller, *Federal Practice and Procedure*: Civil § 2951, at 500 *et seq.*

**23.** "(b) Temporary Restraining Order; Notice; Hearing; Duration. A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time

and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require." Fed.R. Civ.P. 65(b).

**24.** An ex parte hearing before the bankruptcy judge on the record in open court, at which is introduced the best evidence that it is practicable to obtain and present in support of each essential prerequisite to ex parte relief, would seem indispensable. *See Austin v. Altman,* 332 F.2d 273, 275 (2d Cir. 1964). *See also* note 19 *supra.*

**25.** *See* Fed.R.Civ.P. 65(b)(1).

**26.** The description of the efforts made to provide notice should include a statement of the reasons the relief was not requested sooner.

**27.** *See* Fed.R.Civ.P. 65(b)(2).

*Altman,* 332 F.2d 273, 275 (2d Cir. 1964); *Arvida Corp. v. Sugarman,* 259 F.2d 428, 429 (2d Cir. 1958) (*per curiam*). Any order granting ex parte relief without advance notice should include an endorsement reflecting the date and hour of its issuance and should be entered of record in the office of the clerk of the bankruptcy court forthwith.[28] The order should remain in effect not more than ten days from its issuance, unless extended by the court within the ten-day period for good cause shown or by agreement of all adverse parties.[29] The court should proceed to notify and hear adverse parties at the earliest possible time following ex parte relief, and should hear any request for dissolution of the ex parte order on two days' notice or less to the party that obtained it.[30]

It does not seem advisable that the security provisions of Federal Rule 65(c)[31] be considered mandatory in a reorganization context. *See* Rule of Bankruptcy Procedure 765. *See also Wright & Miller, Federal Practice and Procedure: Civil* § 2954, at 535. *Compare In re Lustron Corp.,* 184 F.2d 789 (7th Cir. 1950), *cert. denied,* 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682 (1951), *with Magidson v. Duggan,* 180 F.2d 473 (8th Cir.), *cert. denied,* 339 U.S. 965, 70 S.Ct. 1000, 94 L.Ed. 1374 (1950). An order for ex parte reorganization relief should comport with the requirements of Federal Rule 65(d) in respect of the particularity of its findings and conclusions and of its duration and scope.[32]

Ex parte relief is not warranted in the present circumstances. The reorganization effort is no more immediately threatened by whatever brief deferment is required to afford advance notice to parties in interest than by the 12-day delay already occasioned by the failure of the debtor to request relief on or about November 23, 1979. There is no evidence that the business operations of the debtor must cease in the absence of immediate relief, only that the debtor may be without an adequate 1980 model car inventory to enable the continuation of its business on a normal basis. Although the debtor asserts that it is without funds with which to defray current operating expenses, it has been experiencing that problem for some time without any interruption of its business. The court is satisfied that no immediate or irreparable injury will result either to the debtor or to the reorganization effort as a result of whatever brief delay is occasioned by the need to provide appropriate advance notice of the relief requested to parties in interest.

The pending applications for relief were therefore ordered noticed and heard within five days.

---

**28.** *See* Fed.R.Civ.P. 65(b).

**29.** *See id.*

**30.** *See id.*

**31.** *See* Fed.R.Civ.P. 65(c).

**32.** *See* Fed.R.Civ.P. 65(d). *See Arvida Corp. v. Sugarman,* 259 F.2d 428, 429 (2d Cir. 1958) (*per curiam*).