**In re GARLAND CORPORATION, Bristol Knitting Mills, Inc., D.S.B., Inc. and Garland Knitting Mills of Georgia, Inc., Debtors.**

**Creditors' Committee, Appellant.**

**Bankruptcy No. 80–9001.**

United States Bankruptcy Court, Bankruptcy Appellate Panel, D. Massachusetts.

Oct. 17, 1980.

See also 6 B.R. 452.

**458**

Kaye, Fialkow, Richmond & Rothstein by Richard Kaye, Boston, Mass., Jonathan Helfat and Albert Reisman, New York City, for appellant, Creditors' Committee.

Ropes & Gray by Charles Normandin, Boston, Mass., for appellees, Garland Corp., Bristol Knitting Mills, Inc., D.S.B., Inc. and Garland Knitting Mills of Georgia, Inc.

Christopher Parker, Boston, Mass., for appellee, United States, trustee.

Goodwin, Procter & Hoar by Jon D. Schneider and Evan Jones, Boston, Mass., for appellees, New England Merchants Bank and Prudential Ins. Co. of America.

Widett, Slater & Goldman, P. C. by Robert Robinson, Guy B. Moss and Daniel J. Carragher, Boston, Mass., for appellee, Sydney Parlow, trustee.

Before CYR, C. J., and VOTOLATO and JOHNSON, JJ.

CYR, Chief Judge.

An emergency appeal has been taken from various orders of the bankruptcy judge entered during the early stages of these chapter 11 reorganization proceedings.[1] The Garland Corporation and its subsidiaries [debtor] manufacture and sell clothing, principally knitted goods and sportswear for women. From its earliest beginnings, the debtor achieved financial success as a sweater manufacturer. Severe financial difficulties later developed in the wake of its operation of thirty six retail stores and a factory producing clothing principally for Levi Strauss, and its entry into the field of sportswear design and manufacture.

■ Upon the commencement of its reorganization proceedings, the debtor sought authorization to borrow operating funds from New England Merchants Bank [Bank] and Prudential Insurance Company [Prudential]. Following an *ex parte* hearing the same day,[2] the bankruptcy judge authorized an immediate borrowing from the Bank and Prudential,[3] fixing May 7, 1980, after the formation of the Creditors' Committee, for further hearing on the application. At the conclusion of the May 7 hearing, the Creditors' Committee having appeared without interposing objection, the bankruptcy judge authorized the debtor to borrow an additional $700,000 and to enter into a line–of–credit agreement with the Bank and Prudential for up to $1.4 million in postpetition borrowings.[4] These postpetition loans were

---

1. The Garland Corporation and its three subsidiaries: Bristol Knitting Mills, Inc.; D.S.B., Inc.; and Garland Knitting Mills of Georgia, Inc. filed voluntary chapter 11 petitions on April 29, 1980. The cases are consolidated.

2. The record reveals that only the debtor, the Bank and Prudential received notice of the application. However, it was suggested during oral argument that the U.S. trustee was informed. While the April 30, 1980 order has not been appealed, it was to have been entered only "after notice and a hearing." Bankruptcy Code § 364(c)(1) & (2). The flexible notice formula prescribed by Bankruptcy Code § 102(1)(A) is not so relaxed as to permit *ex parte* relief in the absence of specific findings substantiating its appropriateness in the circumstances. *See, e. g., In re Sullivan Ford Sales, Inc.,* 2 B.R. 350, 1 CBC 2d 400, 5 BCD 1288 (D.Me.1980). The exigent nature of the circumstances may have warranted *ex parte* relief, but not without reasonable efforts to provide advance notice to parties in interest. 2 B.R. at 356. The nonexistence of an official Creditors' Committee does not excuse the failure to attempt notification of the twenty largest unsecured creditors. *See* Interim Local Bankruptcy Rule 1007(a), District of Massachusetts. The Panel opines that there has been no sufficient showing of reasonable efforts to notify other parties in interest. The right to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

3. The order of May 12, 1980 states that $362,000 was borrowed during the week of May 2, 1980 pursuant to the April 30 order.

4. The Bank and Prudential claim prepetition indebtedness of $5.9 million and $3 million, respectively secured by accounts receivable, equipment, and real estate.

later deemed priority costs of administration under Bankruptcy Code § 507(b)[5] and a first encumbrance on all assets of the debtor.[6]

On May 16, the Creditors' Committee appeared in opposition to the request of the debtor to borrow an additional $500,000, and filed a motion to convert the proceedings to chapter 7. After hearing, the bankruptcy judge approved the $500,000 borrowing, increased the line of credit to $1.7 million, declined to convert the proceedings to chapter 7, and granted a motion by the U.S. trustee to appoint a trustee.[7] The Creditors' Committee appeals.

The Appellate Panel authorized an expedited appeal, while denying a stay pending appeal.[8] Immediately following oral argument, the Appellate Panel affirmed the orders of the bankruptcy judge declining to convert the proceedings to chapter 7 and appointing a reorganization trustee. The Panel deferred its decision on the remaining issue in response to Bankruptcy Code § 364(e).[9]

The appellant challenges the May 16 order authorizing a third borrowing in the amount of $500,000 on grounds that the evidence did not demonstrate a reasonable likelihood that the debtor could be successfully rehabilitated, and because the borrowing of operating funds secured by theretofore unencumbered assets requires ade-

Postpetition credit was to be made available to the debtor under a formula based on 80% of prepetition and postpetition accounts receivable outstanding less than 90 days, 10% of the book value of inventory (not in excess of $1,000,000) and $2,200,000 of fixed assets, less prepetition indebtedness.

5. Bankruptcy Code § 507(b) provides:
(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim under such subsection.

6. The order signed by the bankruptcy judge on May 12, 1980 provides as follows:
Any loans made pursuant to such line of credit and pursuant to the order of May 1, 1980 will be secured by a lien on all the assets of the debtors, including, without limitation, a first lien on postpetition receivables, inventory and leasehold rights in a lien junior to the Bank's and Prudential's security interest in prepetition receivables, machinery and equipment, and such loans shall constitute a cost of administration pursuant to § 507(b). . . .
The May 12 order was not appealed.

7. Bankruptcy Code § 151104(a) provides:
At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and *after notice and a hearing*,

the court shall order the appointment of a trustee—
(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . or
(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. . . .
(*Emphasis added.*)
The order appealed from contains no finding substantiating compliance with the notice requirements of section 151104 in respect to the motion to appoint a trustee offered by the U.S. trustee during the course of the May 16 hearing. See the discussion at note 2 *supra.* Moreover, the motion to convert to chapter 7 itself appears to have been made during the May 16 hearing. There can be no question but that the debtor, and perhaps equity security holders as well, were entitled to reasonable advance notice of these motions.

8. By order entered June 6, 1980, the Court of Appeals for the First Circuit dismissed an appeal from the order denying stay. 627 F.2d 1088.

9. Bankruptcy Code § 364(e) reads as follows:
The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

quate protection of the interests of unsecured creditors, within the meaning of Bankruptcy Code § 361, in the absence of which the borrowing constituted a taking of property without just compensation, contrary to the fifth amendment to the Constitution of the United States. The decision of the bankruptcy judge permitting the continued operation of the debtor under the direction of a trustee was challenged on the same grounds.

The refusal to convert the case to chapter 7 and the approval of the motion to appoint a trustee to operate the business were based on findings, adequately supported by the record, that the future financial condition and business prospects of the debtor would be significantly enhanced were it to dispose of its retail stores and the Georgia plant, terminate all but its sweater manufacturing operation, reduce its top–heavy payroll, and bring in new management. The appellant did not deny that significant reductions in employee and executive payrolls and the sale of the retail outlets would produce beneficial results. The likelihood that substantial benefits would result from an aggressive implementation of these initiatives was substantiated by the appellant's own witness. There was uncontroverted evidence that current management had erred seriously in the past, particularly in its cash flow projections and unprofitable business undertakings. The appellant mounts no serious challenge to these findings, but believes it would be better for the estate and creditors were the debtor liquidated under chapter 7.

 The only basis for converting an embryonic reorganization proceeding under

section 1112(b)(1) is a sufficient showing that the debtor would continue to sustain losses or diminish the estate if the reorganization effort is permitted to proceed *and* that there exists no reasonable likelihood of rehabilitation. Bankruptcy Code § 1112(b)(1). While the debtor's own projections clearly evidenced the near certainty of short–term operating losses, the bankruptcy judge concluded, appropriately in our view, that there existed a reasonable likelihood that the debtor could be rehabilitated.[10] See 5 *Collier on Bankruptcy*, ¶ 1112.03[c][i] (15th Ed. 1980) at 1112–14. Where there is a reasonable prospect of a successful rehabilitation a motion to convert under section 1112(b)(1) must be denied. *Id.*

 The appropriateness of the decision to appoint a reorganization trustee under Bankruptcy Code §§ 1104 & 151104 turns upon whether there was a sufficient showing of cause, including incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or, in the alternative, a showing that the appointment would be in the best interests of the creditors and the estate. See, e. g., *In re Hotel Associates, Inc.*, 3 B.R. 343, 1 CBC 2d 733, 6 BCD 160 (E.D.Penn.1980). There is a presumption in a chapter 11 case that the debtor is to continue in control and possession of its business. *LaSherene, Inc. d/b/a The Sunshine Corporation*, 3 B.R. 169, 174, 1 CBC 2d 685, 692, 6 BCD 153, 156 (N.D.Georgia 1980).

 The Appellate Panel must accept the findings of the bankruptcy judge unless clearly erroneous. First Circuit Rules Gov-

10. Furthermore, the notice requirements of section 1112(b) are not shown to have been satisfied. Although the debtor was informed several days earlier that a motion to convert might develop, there was in fact no notice of the motion until May 16, 1980, the day of the hearing. The hearing commenced over the objection of the debtor whose counsel had not yet even seen the motion. The requirement of notice and hearing mandates notice appropriate in the circumstances. 11 U.S.C. § 102(1)(A). *See In re Sullivan Ford Sales*, 2 B.R. 350 (Me. 1980). There is no evidence that notice was

ever given to equity security holders. The record is silent as to why the motion was not filed earlier and interested parties notified in advance of the hearing. "The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean* [234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363], *supra, and it must afford a reasonable time for those interested to make their appearance...*" (*Emphasis added.*) *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 314 (1950).

erning Appeals From Bankruptcy Judges to District Courts, Appellate Panels and Court of Appeals, Rule 16. *In re Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir. 1980); *Boston and Maine Corp. v. First National Bank of Boston*, 618 F.2d 137, 141 (1st Cir. 1980). The findings of fact are amply supported by the record, and the conclusions of law, freely reviewable on appeal, *In re Multiponics, Inc.*, supra, comport with the legislative prescriptions of sections 1104(a) [151104(a)] and 1112(b)(1).

Appellant next challenges the authorization under section 364(c)(2) to borrow operating funds secured by unencumbered assets.[11] The appellant insists that it was an abuse of discretion to permit the May 16 loan to be secured by unencumbered assets of the debtor, without first determining that the debtor was unable to obtain unsecured credit, as required by Bankruptcy Code § 364(c).[12]

■ The May 16 borrowing was another in a series arranged pursuant to a line–of–credit agreement among the debtor, the Bank and Prudential, approved by the bankruptcy judge on May 1, 1980. The May 1 order contains an express finding that unsecured financing was not available to the debtor.[13] A review of the sufficiency of the evidence supporting this finding is severely hampered by the failure of the appellant to include the April 30 hearing

transcript in the record on appeal. Without such a transcript we decline to review. *In re Colonial Realty Investment*, 516 F.2d 154, 160 (1st Cir. 1975). The May 1 order was not appealed and is not, therefore, before us. Neither is there any evidence before us that the ability to obtain unsecured financing improved between May 1 and May 16.

■ Appellant is the official Creditors' Committee representing the holders of unsecured claims against the debtor. The Creditors' Committee is concerned that the satisfaction of unsecured claims may be delayed, diminished or rendered impossible as a result of the authorization to encumber "free" assets as security for postpetition operating loans. Its position appears to be that holders of unsecured claims whose recoveries may be thus materially impaired are entitled, by statute as well as by constitutional guarantee, to adequate protection in advance of the fixing of liens on unencumbered assets as a means of obtaining postpetition operating loans to finance the future operations of the reorganization debtor.

The May 16 borrowing was authorized under Bankruptcy Code § 364(c)(2), after notice and a hearing, upon a sufficient showing that the debtor was unable to obtain unsecured credit. The debtor was in urgent need of operating funds with which

---

11. Bankruptcy Code § 34(c) provides in relevant part:

 If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt–

 (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

 (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

 (3) secured by a junior lien on property of the estate that is subject to a lien.

12. Appellees urge that this issue is mooted by section 364(e). *See* note 9 *supra*.

 Its legislative history indicates that the purpose of section 364(e) is to immunize credit extensions not stayed pending appeal, *see* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. (1977) 347;

S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) 58, U.S.Code Cong. & Admin.News 1978 pp. 5787, 5844, which is not to suggest that section 364 orders not stayed are not appealable. Upon reversal or modification of an order under section 364(c), the appellate tribunal may fashion relief conformably with section 364(e) as is appropriate in the circumstances. Moreover, a constitutional challenge cannot be barred by statute even if the interpretation here urged by appellees were correct.

13. The order of May 1 states:

 Based on the testimony of James Lynch, Vice President and Treasurer of the debtors, representations of counsel and the record in this matter, I make the following findings of fact:

 . . . . .

 7. No other financing is available to the debtor ... The debtor is unable to obtain credit as an unsecured administrative expense.

to meet its payroll. Its 1,300 employees had been instructed not to report for work without calling in advance to learn if the plant would open. The appellant's own witnesses and committee members confirmed that essential raw materials were available only on a cash–on–delivery basis and that other trade creditors would not produce the needed yarns without assurances of payment. The record substantiates the finding that the urgently needed operating monies were otherwise unavailable.

There is no express statutory requirement that holders of unsecured claims be provided "adequate protection." Adequate protection within the meaning of Bankruptcy Code § 361 need be provided only as expressly required under section 362, section 363, or section 364.[14] There is no requirement of adequate protection in respect to credit obtained under Bankruptcy Code § 364(c)(2).[15]

The authorization to use previously unencumbered assets as collateral for postpetition operating loans is further challenged as an unconstitutional deprivation of the fifth amendment rights of unsecured creditors.

■ The bankruptcy power conferred by the Constitution upon the Congress is subject to fifth amendment guarantees against the taking of private property without just compensation.[16] *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935).

The fifth amendment guarantees protection against any taking of private property, even for a purpose wholly public in nature, without just compensation. 295 U.S. at 602, 55 S.Ct. at 869. Therefore, no taking of private property, in reorganization proceedings or otherwise, can be countenanced by the court in contravention of the "just compensation" clause.

■ Although our attention has not been invited to any authority for the proposition that holders of unsecured claims possess constitutionally protected substantive rights in property of the estate of a reorganization debtor,[17] it is at least arguable that the fixing of a lien on property of the estate under the bankruptcy laws in certain circumstances may constitute a taking within the meaning of the "just compensation" clause. It is in the area of collateral impairment, however, that such constitutional concerns more frequently arise in a reorganization context. It seems generally agreed in broad outline at least that Congress in the exercise of its bankruptcy power cannot deprive a creditor of substantial preexisting property rights in specific collateral, without just compensation. *Armstrong v. U. S.*, 364 U.S. 40, 44, 48–49, 80 S.Ct. 1563, 1566, 1568, 1569, 4 L.Ed.2d 1554 (1960); 295 U.S. at 602, 55 S.Ct. at 869. Nevertheless, there are no constitutional constraints inhibiting Congress in the exercise of its bankruptcy power from extinguishing the recovery rights of holders of

14. Bankruptcy Code § 361, 11 U.S.C.A. § 361.

15. *See* note 11 *supra*.

16. U.S.Const. amend. V. There seems to be some confusion in the case law as to whether constitutional guarantees for the protection of substantive property rights in bankruptcy proceedings derive from the "just compensation" clause or from the "due process" clause of the fifth amendment to the United States Constitution. *Compare Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 601–02, 55 S.Ct. 854, 868–69, 79 L.Ed. 1593 (1935) *with Wright v. Vinton Branch Bank*, 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937). *See generally*, Murphy, *Restraint and Reimbursement: The Secured Creditor in Reorganization and Arrangement Proceedings*, 30 Bus.Lawyer 15, 26 (1974).

17. The right of the appellant to procedural due process rests on an entirely different footing.

Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

*Mullane* held that the principal and income beneficiaries under a common trust fund, whose interests were "presumably subject to diminution in the proceeding by allowance of fees and expenses. . . ." were entitled to notice and hearing measuring up to the standards of due process. *Id.*

unsecured claims, because an unsecured claim confers no right in specific property of the obligor. 295 U.S. at 588, 55 S.Ct. at 863. Congress may rearrange the order of distribution of the property of a bankrupt estate without infringing the constitutional rights of the holders of claims thereby deprived of recoveries otherwise available under the preexisting scheme of priority. See, e. g., *New York Credit Men's Adjustment Bureau, Inc. v. Jesse Goldstein & Co.,* 276 F.2d 886, 888 (2d Cir. 1960); *City of Chelsea v. Dolan,* 24 F.2d 522, 523 (1st Cir. 1928).

 Appellant represents the interests of holders of unsecured claims against the debtor. Their constitutional rights do not rise to the level accorded lien creditors, *id.* at 523, and their claims are subject to discharge under federal bankruptcy laws, inasmuch as the constitutional proscription against impairing the obligation of contracts applies to the states alone. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935).

Any impairment of the recoupment anticipated by holders of unsecured claims from unencumbered assets of the estate is dependent for its redress upon congressional rather than constitutional prescription. See *New York Credit Men's Adjustment Bureau v. Jessie Goldstein & Co.,* 276 F.2d 886, 888 (2d Cir. 1960); *City of Chelsea v. Dolan,* 24 F.2d 522, 523 (1st Cir. 1928). Congress has chosen to exercise its substantive bankruptcy power so as not to require "adequate protection" of the interests of the holders of unsecured claims under the Bankruptcy Code in circumstances where the debtor obtains postpetition credit on the strength of a lien on previously unencumbered property of the estate theretofore available in whatever measure for the satisfaction of unsecured claims. See Bankruptcy Code §§ 361 & 364(c)(2). The only criteria mandated by Congress for the fixing of a lien on free assets pursuant to section 364(c)(2) are that such action be authorized by the court, after notice and a hearing, upon a showing that unsecured credit cannot be obtained. Since there are no other constitutional or legislative requirements, the court may permit the use of unencumbered assets as collateral to secure postpetition indebtedness upon compliance with section 364(c)(2).

Affirmed.