In re PARIS INDUSTRIES
CORPORATION, et al.,
Debtors.

PARIS MANUFACTURING CORPORATION, formerly known as. Leander Acquisition Corporation, Plaintiff–Appellee,

v.

ACE HARDWARE CORPORATION and Hesse Hardware, Inc., Defendants–Appellants,

and

The United States of America, on behalf of the United States Navy, Defendant.

Civ. No. 91–0016 B–H.

United States District Court,
D. Maine.

Oct. 8, 1991.

Frederick Emery, Asst. U.S. Atty., Portland, Me., for U.S.

John F. Lambert, Jr., Black, Lambert, Coffin, & Rudman, Portland, Me., Timothy V. Hoffman, Sanchez & Daniels, Chicago, Ill., for Ace Hardware.

Barry L. Kroll, Williams & Montgomery, Chicago, Ill., Rubin G. Segal, Portland, Me., for Paris Mfg.

Richard Abbondanza, So. Portland, Me., for Ace Hardware Corp.

Sara Cook, McKenna, Storer, Rowe, White & Farbug, Chicago, Ill., for Hesse Hardware.

## MEMORANDUM OF DECISION

HORNBY, District Judge.

This bankruptcy appeal presents the question whether a federal bankruptcy court has the authority to enjoin a state court products liability suit brought against the purchaser of a bankruptcy debtor's assets when the only theory of recovery is successor liability to the debtor. The bankruptcy court (Goodman, J.) here enjoined the action because it had previously ordered that the bankruptcy debtor's assets were sold free and clear of all such claims. Concluding that such an injunction

was proper, I AFFIRM the bankruptcy court's Order.

## FACTUAL BACKGROUND

On April 10, 1987, Paris Industries Corporation ("Debtor") filed for Chapter 11 bankruptcy protection. Appointment of a trustee was approved on May 26, 1987. On August 29, 1987, the bankruptcy court (Johnson, J.) approved the sale of the Debtor's manufacturing division to the Leander Acquisition Corporation ("Leander").[1] The court found that "due and proper notice [had] been timely given to all creditors, other parties-in-interest, all Defendants named in the Complaint and all parties entitled to receive notice...." (Order of Sale, August 29, 1987 at ¶ 1). The court ordered:

> Leander shall not assume or be liable for any obligation arising from any activities of the Debtor with respect to the property covered hereby, except as specifically provided in the Leander Counteroffer, and any documents executed and delivered in connection therewith....[2]

The Leander Counteroffer provided that the Debtor's assets were to be sold to Leander "free and clear" of "all claims for product liability (to the extent that such claims are in existence or arise out of products manufactured and sold prior to the closing date)" and that Leander was not responsible for any "product liability claims, actual or contingent, with respect to any inventory sold, shipped or delivered prior to the date of closing." (Leander Amended Counteroffer at 15–16).

Between November, 1984 and December, 1985, long prior to the Chapter 11 filing, Mr. and Mrs. Robert Pabst, residents of Illinois, purchased a wooden toboggan from either Ace Hardware Corporation ("Ace") or Hesse Hardware, Inc. ("Hesse"). This toboggan had been manufactured by the Debtor's manufacturing division. On December 15, 1987, after the bankruptcy court-approved sale to Leander, Mrs. Pabst was injured while riding the toboggan.

The Pabsts filed a products liability and negligence complaint on December 28, 1988 in Illinois state court naming as defendants Ace, Hesse, "Paris Manufacturing Corporation, a foreign corporation; and Leander Acquisition Company, D/B/A Paris Manufacturing Company, a foreign corporation." (Leander Complaint for Declaratory Judgment and Injunctive Relief at Exh. C). Ace and Hesse filed third-party complaints for contribution against Leander. Leander moved for summary judgment, denying liability. The Illinois court denied the motion on October 30, 1990.

On October 10, 1990 Leander filed a complaint in the bankruptcy court for a declaratory judgment and injunctive relief. Leander requested that the bankruptcy court declare the Leander purchase of the Debtor's assets to be "free and clear of all of the [Pabsts', Ace's and Hesse's] state court claims, whether asserted by complaint, third-party complaint or otherwise." (Leander Complaint for Declaratory Judgment and Injunctive Relief). Leander also sought to enjoin the Pabsts, Ace and Hesse from continuing the Illinois state court action against it and from instituting any further actions in connection with the manufacture and sale of products covered by the terms of the August 29, 1987 sale order.

On November 28, 1990 the bankruptcy court conducted a hearing on the preliminary injunction and proceeded to enter a permanent injunction. The court found no

---

**1.** Leander changed its name to Paris Manufacturing Corporation on December 8, 1988 and *subsequently went out of business in June, 1989.* I will refer to the appellee in this action as Leander rather than as Paris Manufacturing Corporation, however, to avoid any confusion with the Debtor, Paris Industries Corporation.

**2.** The court's order went on to provide:
[A]ll transfers of property of the Debtor and its bankruptcy estate pursuant to the Amend-

ed Counteroffer shall be free and clear of all liens, encumbrances and other interests except *as expressly provided in the Amended Counteroffer,* with any such liens, encumbrances and other interests to attach to the proceeds thereof with the same validity, priority and enforceability as previously existed in the property to be sold....
Order of Sale, August 29, 1987.

remaining issues of material fact and ordered Ace and Hesse[3] to dismiss Leander from the state court proceedings. The court also enjoined them from pursuing Leander at any time in connection with the 1987 purchase of the Debtor's assets. Ace and Hesse have appealed.[4] In their appeal, Ace and Hesse challenge the authority of the bankruptcy court to issue its injunction in December, 1990. They argue that there is no jurisdiction in the bankruptcy court to issue such an injunction and that even if there is jurisdiction, the bankruptcy court should not have granted injunctive relief because there is no impact on the Debtor's estate and because it would be inequitable to grant injunctive relief where they had received no notice of the sale or its terms at the time that the order was entered. Finally, they maintain that the bankruptcy court proceeded precipitously to enter the permanent injunction without sufficient notice to them.

Since Ace and Hesse have not challenged the interpretation of the August 29, 1987 Order of Sale, I construe it as an order of the bankruptcy court that did, indeed, provide that Leander purchased the Debtor's assets free and clear of all claims like those Ace, Hesse and the Pabsts seek to assert.

## DISCUSSION

### I. *Bankruptcy Court Jurisdiction*

■ Title 28 U.S.C. § 1334(b) confers upon the United States district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Title 28 U.S.C. § 157(a) allows the district courts to refer to bankruptcy judges "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11...." The "related to" language has been read to require that the proceeding's outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re G.S.F. Corp.*, 938 F.2d 1467, at 1475, (1st Cir.1991) (potential indemnity claim sufficient), quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984); 1 *Collier On Bankruptcy* ¶ 3.01 at 3–28 (1991) (adding that "the courts generally have adopted an expansive interpretation of the concept of 'relatedness.'").

The bankruptcy court found jurisdiction in this case on the ground that "these actions are core proceedings arising out of an order of this Court approving the sale of property, and because these proceedings affect the liquidation of the assets of the estate." (Amended Order of December 21, 1990) (*citing* 28 U.S.C. § 157(b)(2)(N), (O)). It also found that allowing actions such as the Illinois suit to proceed would "substantially affect potential sales of assets in all estates arising in bankruptcy and erode the ability of trustees, debtor's [sic], or debtor's-in-possession [sic] to sell estate assets under the authority of the Court...."

■ I agree that the bankruptcy court had jurisdiction. First, the Illinois action is a direct challenge to the bankruptcy court's 1987 order,[5] entered in a matter where it had clear core jurisdiction. Second, were Leander found liable in Illinois state court, it would have grounds for seeking rescission of the 1987 sale, having bargained for a sale free and clear of liability.[6] The

---

**3.** The Pabsts have voluntarily elected not to pursue their direct action against Leander.

**4.** That part of the order directing Ace and Hesse to dismiss Leander was stayed pending the appeal of the court's decision. The bankruptcy court's ruling was issued in written form on December 13, 1990; however, that order was amended at the request of the parties on December 21, 1990, making it a final judgment and providing that the stay provision regarding dismissal was effective only until either the appeal was concluded or the Illinois proceedings were ready to commence. It is the December 21, 1990 ruling that Ace and Hesse now appeal.

**5.** Unlike *In re Chicago, Rock Island & Pac. R.R.*, 794 F.2d 1182, 1187–88 (7th Cir.1986), and *Xonics v. First Wisconsin Fin. Corp.*, 813 F.2d 127, 130 (7th Cir.1987), the bankruptcy court order here directly covered the controversy. Thus, Judge Easterbrook's skepticism concerning jurisdiction based only upon future possible effects, *id.*, is not applicable.

**6.** Contrary to Ace's and Hesse's arguments, the purchase of the assets on an "as is" basis does not make the sale nonrecourse. Other provisions of the agreement, quoted earlier in text, required that they be sold free and clear of claims like those of Ace and Hesse.

bankruptcy judge, therefore, could properly find that the Illinois state court action would have an adverse impact on an estate being administered in bankruptcy (no plan has yet been filed), and that this case was consequently "related" to a case under title 11.[7]

▌ Finally, the bankruptcy court also retained ancillary jurisdiction. Bankruptcy courts must have the ability to enforce prior orders and "secure or preserve the fruits and advantages of a judgment or decree rendered therein.... The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause...." *Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); *see In re White Motor Credit Corp.*, 75 B.R. 944, 947 (Bankr. N.D.Ohio 1987) ("ancillary jurisdiction to interpret and enforce prior orders includes purchasers' actions for declaratory and injunctive relief to enforce orders of sale")[8] *See also In re Vincent*, 68 B.R. 865, 869 (Bankr.M.D.Tenn.1987). The 1987 order of sale to Leander was a core proceeding as defined by 11 U.S.C. § 157(b)(2)(N). It explicitly prohibited claims like those Ace and Hesse seek to assert and its validity has not been challenged. The bankruptcy court, therefore, had ancillary jurisdiction to enter its November 26, 1990 injunction preserving the effect of that order.[9]

## II. *Authority Under 11 U.S.C. § 105(a)*

Ace and Hesse argue that even if jurisdiction exists, the bankruptcy court exceeded its authority under 11 U.S.C. § 105(a) and abused its discretion by issuing the injunction. Section 105(a) gives the bankruptcy court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Ace and Hesse claim that in order for the court to exercise that authority, the bankruptcy estate must be adversely affected. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1003 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Since I have already determined that such a showing has been made, the bankruptcy court had the necessary authority under § 105(a).

With respect to abuse of discretion, it is important to observe that the bankruptcy court never prohibited Ace and Hesse from making a claim against the bankruptcy estate. Their ability to assert such a claim, *see Pettibone Corp. v. Ramirez*, 90 B.R. 918 (Bankr.N.D.Ill.1988), is not the issue. (It appears from the colloquy of the lawyers before the bankruptcy judge that the estate has no assets and that the proceeds of the Leander sale did not even pay off a secured claim; hence, Ace's and Hesse's disinterest in the estate.) Instead of asserting a claim against the estate,[10] Ace and Hesse want to assert a claim against the company that purchased assets from

7. Whether a particular estate actually has any assets (Ace and Hesse maintain that this estate does not) is not the issue. The creation of a claim is alone sufficient to meet the language of *Pacor* and *G.S.F. Corp., Supra*. Generally, allowing state court product liability suits based on successor liability, when the bankruptcy court's order of sale specifically precluded such a transfer of liability, would severely hamper the ability of bankruptcy courts and trustees to dispose of a debtor's assets. Such suits would inevitably diminish the value to be realized in a sale by the estate, and in some cases, discourage sales altogether.

8. The subsequent treatment of *In re White Motor Credit Corp.* has been unremarkable. A district court in Pennsylvania, discussing this case, did not address the jurisdictional issue. *Conway v. White Trucks*, 692 F.Supp. 442 (M.D.Pa. 1988). This decision in turn was affirmed by

the Third Circuit, *Conway v. White Trucks*, 885 F.2d 90 (3rd Cir.1989), which specifically did not reach any of the issues presented in *In re White Motor Credit Corp.* at 947.

9. The parties have not argued the effect of 28 U.S.C. § 2283. *See G.S.F. Corp., supra.*

10. Ace's and Hesse's claims have accrued prior to confirmation of any plan (there still has been no plan of reorganization submitted in the debtor's Chapter 11 proceeding) and are therefore subject to the bankruptcy court's jurisdiction (and discharge) if asserted against the Debtor. Had a plan been confirmed and had the Debtor emerged from Chapter 11 before the accrual of Ace's and Hesse's claim, they would be entitled to assert their claim against the emerging corporation. That is so, not because of their lack of notice, but because they would not have had a claim in existence during the bankruptcy proceedings that could have been discharged.

the Debtor. They do not argue on appeal that the bankruptcy court lacked authority in its August 1987 sale order to insert the condition that the sale to Leander was free and clear of all product liability claims based upon products manufactured, sold and delivered prior to closing.[11] Instead, Ace and Hesse contend that the bankruptcy court should not have used its injunctive powers under § 105(a) in 1990 because neither they nor any other future tort claimant received notice or representation at the time the August 29, 1987 sale order was entered.[12] They claim that this 1990 enforcement of the prior order by the bankruptcy court's injunction violates their right to due process and that the bankruptcy court should have deferred to the Illinois state court.

If Ace and Hesse were challenging the validity of a discharge, this would be a difficult question. A growing body of case law has wrestled with the effect of bankruptcy proceedings on later arising tort claims. Courts and commentators have debated whether a bankruptcy court has the power to absolve a debtor from claims that have not yet even arisen; whether a legal representative can be appointed to represent a class of future claimants so that their claims can be resolved in the overall bankruptcy disposition; whether notice is possible to such potential claimants and, if so, what kind of notice; and whether bankruptcy can provide a "fresh start" to businesses and individuals if there is no way to resolve future tort claims. But Ace and Hesse are not asserting a claim against the bankrupt estate—indeed, since no plan has been confirmed, claims against the estate are not yet discharged. Instead, they are challenging only the bankruptcy court's order of sale to Leander and its enforceability against them because they had no notice of the sale. The question is whether their lack of notice somehow prevents the bankruptcy court from issuing its injunction to enforce the prior order and requires it to defer to the Illinois state proceeding. I conclude that Ace and Hesse were not prejudiced by their lack of notice.

The purpose of notice to creditors and other parties-in-interest when bankruptcy assets are to be sold, see Bankruptcy Rule 2002(a), is to insure that the sales price is fair and that the funds flowing into the bankrupt estate for distribution among creditors or for other purposes are the most that could be realized from the assets sold. But Ace and Hesse are not challenging the amount Leander paid for the assets it purchased. Instead, their real complaint, as revealed at oral argument, is that the trustee canceled certain products liability insurance that the Debtor had carried and that would have covered the Pabsts' claims against them. Although they have not sued the trustee or made any claim against the estate, they argue that, if they had been notified of the pending sale, they would have come into bankruptcy court at that time to attempt to persuade the bankruptcy court to require the trustee to maintain insurance. But whether the trustee improperly canceled insurance is not the issue before me or before the bankruptcy court; the issue is whether the order of sale, free and clear of claims, should be enforced. In fact, Ace and Hesse lost nothing by virtue of the sale. Before the sale they had no claim against Leander but only an inchoate claim against the Debtor. (Leander had no relationship to either the Debtor or Ace, Hesse and the Pabsts.) Ace

**11.** Compare the provision upheld in *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89 (2nd Cir.1988), imposing an injunction on suits by third parties against insurers who entered into a settlement agreement with the debtor. Ace and Hesse have not argued that the Illinois law of successor liability precludes the effectiveness of such a provision in the bankruptcy decree. For a discussion of the effects of bankruptcy on successor liability, *see In re White Motor Credit Corp., supra; Nelson v. Tiffany Indus., Inc.,* 778 F.2d 533 (9th Cir.1985). Generally, the difficul-

ties in this area seem to be created by the fact that the recently created state law theory of successor liability based upon acquisition of a product line is simply inconsistent with more ancient federal bankruptcy principles based upon the sale of a debtor's assets to maximize the estate for creditors. *See generally, In re White Motor Credit Corp., supra* at 950–51.

**12.** At the time of the sale, Ace and Hesse received no notice because they had no known claim; the accident had not yet occurred.

and Hesse still have their claim against the Debtor (now the estate) regardless of the sale. Furthermore, the liquidation of the assets and their replacement with cash (which was then apparently distributed to a secured creditor) has not affected Ace's and Hesse's ability to recover on their claim. The irony of Ace's and Hesse's argument is that they would not even be able to make their claim against Leander were it not for the sale, for it is only by the sale of assets and the doctrine of successor liability that they can even assert such a claim.

In sum, I conclude that Ace and Hesse were in no way prejudiced by the lack of notice and their inability to appear and argue their position on the sale. They have made no showing that, if they had been notified and had appeared, they could have made any arguments to dissuade the bankruptcy court from issuing its order that the assets be sold free and clear of all claims.[13] Since they have shown no prejudice, there was no need for the bankruptcy court to vacate its earlier order as it applies to Ace and Hesse.[14]

I find, therefore, that the bankruptcy court was well within its authority when it enjoined Ace and Hesse from pursuing Leander in state court in connection with the August 29, 1987 sale order.

### III. Permanent Injunction

■ The bankruptcy court specifically found that "no material issues of fact"

existed and, therefore, elected to enter a permanent injunction during the preliminary injunction hearing. Amended Order of December 21, 1990. Ace and Hesse assert that the bankruptcy court improperly granted this permanent injunction without the requisite notice, evidentiary hearing or proper justification.

Bankruptcy Rule 7065 incorporates Fed. R.Civ.P. 65 in adversarial bankruptcy proceedings. Rule 65(a)(2) provides:

**Consolidation of Hearing with Trial on Merits.** Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.

The First Circuit has cautioned that "the exercise of that power is tempered by the requirement that the court inform the parties 'before or after the commencement of the hearing' that such action is contemplated." *T.M.T. Trailer Ferry, Inc. v. Union De Tronquistas De Puerto Rico, Local 901*, 453 F.2d 1171, 1172 (1st Cir.1971) (interpreting Fed.R.Civ.P. 65(a)(2)). *See also K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 913 (1st Cir.1989). The United States Supreme Court has stated:

[T]he parties should normally receive clear and unambiguous notice (of the court's intent to consolidate the trial and the hearing) either before the hearing commences or at a time which will still

---

**13.** As the Third Circuit has observed, the notice argument "primarily provides a justification for permitting [a claimant] to file a late proof of claim with the bankruptcy court or to avoid the discharge ... rather than a justification for imposing successor liability on [the asset purchaser]." *Conway v. White Trucks,* 885 F.2d 90, 96 (3rd Cir.1989).

**14.** I thus disagree with *Mooney Aircraft Corp. v. Foster,* 730 F.2d 367 (5th Cir.1984), which held that a bankruptcy court cannot approve the sale of estate assets free and clear of all claims that might arise in the future, but only free of claims then existing. *Id.* at 375. To conclude that a bankruptcy court cannot approve the sale of assets free and clear of such future claims against a purchaser from the debtor significantly impairs the bankruptcy court's ability to administer bankruptcy estates. Every sale must then be discounted by the risk the purchaser

sees of future claims. The result will be decreasing assets for those who already have claims and essentially a preference for later-filed claims that can be brought against the purchaser. *See In re All American of Ashburn, Inc.,* 56 B.R. 186, 190 (Bankr.N.D.Ga.1986):

[There are] two policies against allowing successor liability to follow bankruptcy sales. The first is that if a plaintiff asserts a claim grounded on successor liability after a bankruptcy sale, he, in effect, receives a priority over those claims which were paid in accordance with the Bankruptcy Code.... The other reason is the negative impact that potential successor liability claims would have on the trustee's ability to sell assets of the estate at a fair price.

(*citing Forde v. Kee–Lox Manufacturing Co., Inc.,* 437 F.Supp. 631, 633–34 (W.D.N.Y.1977), *aff'd on other grounds,* 584 F.2d 4 (2d Cir.1978)).

afford the parties a full opportunity to present their respective cases.

*University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (quoting *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972)).

The bankruptcy court here did not provide Ace and Hesse with advance notice of its intent to consolidate the hearing and consider a permanent injunction; however, the bankruptcy judge made clear shortly after the commencement of the November 28, 1990 hearing that such was his intention.[15] I conclude that this notice, after the hearing had begun, provided Ace and Hesse with a sufficient opportunity to present their respective cases. A review of the transcript, the pleadings, and the briefs and record on appeal reveals that there are, indeed, no material issues of fact requiring resolution. The August 29, 1987 sale order speaks for itself. By referring to the terms of Leander's amended counteroffer, the sale order specifically relieves Leander of all liability for product liability claims stemming from products manufactured prior to the closing date. The Illinois state court complaint filed by the Pabsts, attached to Leander's complaint, clearly establishes that the toboggan was manufactured and sold prior to the sale of the Debtor's assets to Leander and that assertion has never been challenged. Armed with this information, the bankruptcy court was in a position to issue a permanent injunction based on the merits. None of the other proffered areas of inquiry required testimony or further development; they were simply irrelevant.[16] The only evidence Ace and Hesse sought to introduce at the November 28, 1990 hearing concerned the existence of Leander's liability insurance. Whether such a policy exists has no bearing upon the appropriateness of the injunction.[17] All the material facts were before the bankruptcy judge, and there was no reason to delay the entry of a permanent injunction. The lack of advance notice to Ace and Hesse did not prejudice their factual presentation.[18] To the extent that Ace and Hesse were precluded from preparing and presenting fully-developed argument on behalf of their clients, that opportunity has now been provided on this appeal, as well as the opportunity to point to any factual showing they would have made in the bankruptcy court had they had more notice. They have presented nothing

---

**15.** "I'm prepared to go forward on the permanent injunction today if you'd like to do so." Transcript of November 28, 1990 hearing at 5. "Is there any reason why I shouldn't go forward and, if there is no real material issue as to any fact, determine whether or not there is or is not room for a permanent injunction so that you don't have to come all the way back here again?" *Id.* at 10–11. "Again, if this Court were to find that there are no material issues on any of the facts, whether or not this Court, instead of issuing a preliminary injunction, should issue a permanent injunction." *Id.* at 12. "I will hear you on any argument as to why [the injunction] shouldn't be permanent. The only reason why I'm suggesting it should be permanent now is because I cannot see that there's any dispute as to facts or anything in the briefing that's going to assist me any more than the research I've already done based upon your argument." *Id.* at 49.

**16.** I have concluded earlier in this opinion that the asserted inadequacy of notice and protection of future tort claimants does not bear upon the protection available to Leander under the August 29, 1987 order of sale.

**17.** The Eleventh Circuit case cited by the appellants, *In re Jet Florida Sys. Inc.*, 883 F.2d 970 (11th Cir.1989), stands only for the proposition that a suit against a debtor after discharge in bankruptcy can, in certain circumstances, proceed to a determination of liability as long as an insurer will bear all of the costs. In other words, a *debtor's* insurer does not benefit from the debtor's bankruptcy. That has no bearing on Leander's (or its insured's) liability.

**18.** Wright and Miller conclude that:

ordering consolidation during the course of a preliminary injunction hearing is reversible error when little or no notice is given of this change and the effect is to deprive a party of the right to present his case on the merits.... On the other hand, if it is clear that consolidation did not detrimentally affect the litigants, as, for example, when the parties in fact have presented their entire cases and no evidence of significance would be forthcoming at trial, then the trial court's consolidation will not be considered to have been improper.

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2950 at 487–488 (1973) (footnotes omitted).

that undercuts the bankruptcy court's ruling.

## CONCLUSION

Accordingly, I find that the bankruptcy court's entry of a permanent injunction at the hearing on a preliminary injunction was proper under Fed.R.Civ.P. 65(a)(2), and the Order is AFFIRMED.